IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| KEITH L. SHARP, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) CASE NO. 2:22-cv-127-RAH-SMD |
| | ) |
| CITY OF MONTGOMERY, ALABAMA, | ) |
| | ) |
| Defendant. | ) |

**<u>RECOMMENDATION OF THE MAGISTRATE JUDGE</u>**

Pro se plaintiff Keith L. Sharp ("Sharp") brings 42 U.S.C. § 1983 claims against the City of Montgomery (the "City") arising from the City's nuisance abatement action at his property located at 164 Arlington Road. Sharp alleges that City personnel violated his Fourth Amendment rights when they entered his fenced backyard without a warrant and his Fourteenth Amendment due process rights by failing to give him proper notice of the abatement action. Pending before the court is the City's motion to dismiss, or in the alternative, for summary judgment.[1] (Doc. 31). The summary judgment record contains sufficient evidence that City personnel entered the curtilage of Sharp's property without a warrant for his Fourth Amendment claim to proceed to trial. There is no evidence that the alleged failure to properly notify Sharp of the abatement action was due to a City policy or custom, and his due process claim should be dismissed.

---

[1] Although the City titles its motion as a motion to dismiss or in the alterative for summary judgment, it only argues the Rule 56 standard. (Doc. 32) pp. 4-5.

## I.     Legal Standard

### A.     Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When the non-moving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to "make a showing sufficient to establish the existence of an element essential to [its] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The legal elements of the plaintiff's claim dictate which facts are material and which are irrelevant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A fact is not material if a dispute over that fact will not affect the outcome of the case under the governing law. *Id.* "If the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law." *Celotex*, 477 U.S. at 331 (White, J., concurring).

The court must view the proffered evidence in the light most favorable to the nonmovant and resolve all reasonable doubts about the facts in the nonmovant's favor. *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1242-43 (11th Cir. 2001). Although factual inferences must be drawn in favor of the non-moving party and pro se pleadings are entitled to a liberal interpretation, a litigant's pro se status does not allow him to escape the essential burden on summary judgment of establishing a genuine dispute concerning a material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). On

summary judgment, a pro se plaintiff must still adduce evidence sufficient to establish the essential elements of his claims. *Id.*

### B. Municipal Liability

To establish a § 1983 constitutional tort claim against a municipality, a plaintiff must show that the city's policy or custom caused the constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-694 (1978); *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016). An ordinance or resolution passed by the city council is one way to establish official policy. *Id.* at 1279. A city cannot be held liable simply because one of its employees violated a plaintiff's constitutional rights. *Id.* The Supreme Court explains that "the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution[.]" *Monell*, 436 U.S. at 690.

## II. Facts

Sharp owns a single-family home located at 164 Arlington Road in Montgomery, Alabama. (Doc. 31-1) p. 6. He does not reside there, and the house is unoccupied. (Doc. 31-1) p. 17. In early November 2020, the City received a complaint regarding the vacant property. (Doc. 31-1) p. 4. A few days later, a city code enforcement inspector visited the property and determined it was a public nuisance due to overgrown grass, weeds, wood, tree limbs, auto parts, and other litter and debris in the front and back yards. (Doc. 31-1) p. 19.

The inspector executed a check box violation notice form addressed to Sharp at 164 Arlington Road giving him ten days to abate the nuisance or the City would bring the matter before the City Council for authority to clean up the property at the owner's expense. (Doc. 31-1). Sharp disputes that he ever received this notice. (Doc. 44) p. 3. The inspector reinspected the property approximately fifteen days later. (Doc. 31-1) p. 20. Body cam video from the reinspection shows the inspector walking into the property's fenced backyard through a narrow space between the garage and the fence. (Def. Ex. 1-C). The backyard is completely enclosed by a privacy fence that is overgrown with vines and trees. *Id.* It is impossible to see into the backyard from the street or front yard. *Id.* The inspector notes in the video that the front yard now looks pretty good, but the backyard is still a wreck, and the property is still in violation. *Id.*

Approximately a week after the reinspection, the City Council met and passed a resolution declaring 164 Arlington Road and several other properties in Montgomery to be public nuisances. (Doc. 31-3) pp. 2-3. The Council ordered the City to immediately abate the nuisances and authorized it to assess the cost of abatement against the properties. *Id.* p. 3. The City hired a contractor that mowed the front and back yards at 164 Arlington Road and cleaned up the property at a cost of $450. (Doc. 31-1) p. 20. Sharp alleges that the contractor broke a lock on his garage door to enter the property and removed building materials, scrap metal, and other items. Amd. Compl. (Doc. 18) p. 3. It is undisputed that the City never obtained a warrant for its personnel or contractor to enter Sharp's property. The City placed a $650 tax lien on the property for the $450 cost of abatement plus a $150

4

fee for failure to timely abate and a $50 fee because it was a second violation.[2] (Doc. 31-1) p. 20. Sharp eventually paid the lien, and it was released in April 2022.

### III. Sharp's Claims

Sharp alleges two claims in his amended complaint. (Doc. 18). Count one is a Fourth Amendment warrantless search claim alleging that City personnel and contractors entered the fenced backyard at 164 Arlington Road without a warrant. (Doc. 18) pp. 2-3 ¶¶ 6, 8, 10. Count Two is a Fourteenth Amendment procedural due process claim alleging that the City failed to give him adequate notice of its nuisance abatement action. (Doc. 18) pp. 2-3 ¶ 7. Sharp prays for a jury trial and demands unspecified compensatory damages and costs.

### IV. Discussion

#### A. Warrantless Search

A warrantless search is presumptively unconstitutional, and the government bears the burden of showing an exception to the warrant requirement. *Am. Fed. of State, Cty, & Mun. Empl. Council 79 v. Scott*, 717 F.3d 851, 881-882 (11th Cir. 2013). Here, it is undisputed that the City never obtained a warrant to enter Sharp's property. (Doc. 32). The City argues without citation to authority that "[t]he inspections of 164 Arlington Road were not searches within the meaning of the Fourth Amendment." (Doc. 32) p. 9.

---

[2] Sharp alleges the lien was for $658.53. (Doc. 18) p. 3 ¶ 10. This $8.53 dispute is de minimis and immaterial.

5

However, it is clearly established that the warrant requirement of the Fourth Amendment[3] applies to municipal entries onto private land to locate and abate suspected public nuisances. *Michigan v. Tyler*, 436 U.S. 499, 504-505 (1978); *Michigan v. Clifford*, 464 U.S. 287, 291-292 (1984). The Supreme Court explains that the purpose of the Fourth Amendment is to safeguard an individual's privacy and security against arbitrary invasions by government officials, and it applies with equal force to routine administrative inspections by health, fire, code enforcement and building inspectors just as it does to criminal investigations by law enforcement officers. *Tyler*, 436 U.S. at 504-505. *See also Dixon v. Miami-Dade Cnty.*, 2007 WL 9724959, at *1 (S.D. Fla. Apr. 24, 2007) (holding that the warrant requirement of the Fourth Amendment "applies to entry onto private land to search for and abate suspected nuisances"); *Youngblood v. Florida*, 2005 WL 8159645, at *5 (M.D. Fla. Mar. 17, 2005) (holding that it is clearly established that health and safety inspection of private property requires a warrant).

The next issue is whether the City violated Sharp's reasonable expectation of privacy when its personnel and contractors entered the yard at 164 Arlington Road. The Fourth Amendment's protection against unreasonable searches and seizures extends beyond the home itself to the area immediately surrounding the house known as the

---

[3] The Fourth Amendment is made applicable to the states by the Fourteenth Amendment. *Terry v. Ohio*, 392 U.S. 1, 8 (1968).

curtilage.[4] *United States v. Dunn*, 480 U.S. 294, 300 (1987). What constitutes curtilage is a question of fact. *United States v. Berrong*, 712 F.2d 1370, 1374 (11th Cir. 1983).

The Supreme Court instructs courts to consider the following four factors in determining whether an area is curtilage: (1) the proximity of the area to the home; (2) whether the area is included within an enclosure surrounding the home; (3) the nature of the uses to which the area is put; and (4) the steps taken to protect the area from observation by people passing by. *Dunn*, 480 U.S. at 301. The Court cautions that these factors cannot be mechanically applied in a precise formula, but rather that they are useful analytical tools to answer the central question of whether the area is "so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *Id.*

The body cam video here shows the City's inspector entering the small backyard through a narrow space between the garage and the fence. (Def. Ex. 1-C). This is clearly not a public space. The backyard is bordered by the house and attached garage on one side, and it is completely enclosed by a fence on the other three sides. *Id.* The fence appears to be at least six feet tall and is overgrown with vines and trees. *Id.* It is impossible to see into the backyard from the adjacent streets. *Id.*

---

[4] At common law the curtilage meant the "yard, courtyard or other piece of ground included within the fence surrounding a dwelling house." *Fixel v. Wainwright*, 492 F.2d 480, 483 (5th Cir. 1974) (internal quotes and citation omitted. Opinions of the former Fifth Circuit decided before September 30, 1981, are binding authority in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

Looking at the *Dunn* factors, the small backyard is immediately adjacent to the house, it is enclosed within a fence, and it is completely protected from observation by passersby. *See Dunn*, 480 U.S. at 301. The only unknown is what the yard was used for although it appears that it may have been used to store auto parts and other junk. Fenced backyards are the paradigmatic example of curtilage. *See, e.g.*, *Fixel*, 492 F.2d at 484 (holding that backyard of apartment building that was completely removed from the street and surrounded by a chain link fence was curtilage). At the very least, the evidence in the summary judgment record here is sufficient to raise a genuine issue of fact on whether Sharp's fenced backyard was curtilage protected by the Fourth Amendment.

The City argues that the rundown condition of 164 Arlington Road shown in the video was "hardly consistent with a demonstration of a subjective expectation of privacy [] in the yard of the property." (Doc. 32) p. 9. This appears to be an abandonment argument. A warrantless search of property is permissible where the owner has abandoned it. *United States v. Edwards*, 644 F.2d 1, 2 (5th Cir. Unit B, 1981)[5]; *United States v. Harrison*, 689 F.3d 301, 306-307 (3d Cir. 2012). "This is, however, a difficult standard to meet[.] . . . Before the government may cross the threshold of a home without a warrant, there must be clear, unequivocal and unmistakable evidence that the property has been abandoned." *Id.* at 309. The Third Circuit cautions in *Harrison* that it "is unreasonable to assume that a poorly maintained home is an abandoned home[,] . . . [and] [t]here simply is

---

[5] Decisions by Unit B of the former Fifth Circuit are binding precedent in the Eleventh Circuit, regardless of the date of issuance. *United States v. Wingo*, 789 F.3d 1226, 1238 n. 12 (11th Cir. 2015).

no 'trashy house exception' to the warrant requirement." *Id.* at 311. Moreover, the City's efforts to contact and fine Sharp for the condition of 164 Arlington Road are inconsistent with a belief that the property was abandoned. Therefore, the City has not established that Sharp abandoned the property at this summary judgment stage, and this defense presents another disputed fact issue for trial.

Finally, under *Monell*, Sharp must establish that the inspector's warrantless search of his property was due to a City policy or custom. *Hoefling*, 811 F.3d at 1279. Official City policy must be the "moving force" behind the alleged constitutional violation to establish municipal liability under § 1983. *Monell*, 436 U.S. at 694-95; *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989). Here, § 12-131 of the City Code of Montgomery titled "right of entry for inspections" provides that "[w]henever the Property Maintenance Division of the city has reasonable cause to believe that a condition prohibited by this article exists, employees and duly authorized agents of the housing code department shall have the right to enter the property in question for the purpose of inspecting the property." Code of Ordinances for the City of Montgomery, Alabama § 12-131 (2021). This provision is found in Division 5 of the City Code concerning abatement of nuisances and assessment procedures. The City Code provision makes no reference to the Fourth Amendment's warrant requirements for entry onto private property. Examining this ordinance in the light most favorable to Sharp, it is sufficient to establish a fact question concerning municipal liability at this summary judgment stage. *Hoefling*, 811 F.3d at 1279

(holding that a municipality can be liable under § 1983 for an ordinance passed by a city council).

Accordingly, the City's motion for summary judgment on Sharp's Fourth Amendment warrantless search claim should be denied, and that claim should proceed to trial.

B. **Procedural Due Process**

Sharp's second claim is a Fourteenth Amendment procedural due process claim. Amd. Compl. (Doc. 18) pp. 2-3 ¶ 7. Sharp alleges that he was not properly notified of the City's abatement action. *Id.* The Due Process Clause of the Fourteenth Amendment generally requires notice and an opportunity to be heard prior to deprivation of a property interest. *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011). Sharp alleges that although the City's violation notice is addressed to him at 164 Arlington Road, he never received it, and his proper mailing address is 3200 Doris Circle. Amd. Compl. (Doc. 18) pp. 2-3 ¶ 7. He also alleges that the City did not post a sign announcing the abatement action on the property.

This claim fails under *Monell* because Sharp has adduced no evidence showing that the City's alleged failure to notify him was due to a City policy or custom. The City Code provides that written notice of a nuisance abatement action should be "mailed by first class mail to 'Occupant' at the address of the property . . . and to the owner of said property as the information is listed in the records of the tax assessor or revenue commissioner." Code of Ordinances for the City of Montgomery, Alabama § 12-132(a) (2021). In addition, a

10

sign entitled "Notice to Abate Nuisance" shall be conspicuously posted on the property. *Id.* at § 12-132(c). The City code also details the required contents of the notice. § 12-132(b).

These code provisions show that the City's official policy is to notify property owners of nuisance abatement actions and provide them an opportunity to cure, and to be heard before the City council. *Id.* §§ 12-132 through 12-133. Sharp has produced no evidence showing that it is official City policy or custom to not notify property owners of abatement actions. Even if a City employee negligently or intentionally failed to follow the City codes' required notice provisions, the City cannot be held liable for that misconduct. *Monell,* 436 U.S. at 693 (municipal liability under § 1983 cannot be imposed vicariously under *respondeat superior* solely on the basis of an employer-employee relationship with a tortfeasor). Accordingly, Sharp's procedural due process claim should be dismissed.

### V. Conclusion

For the above-stated reasons, the Magistrate Judge RECOMMENDS that the City's motion to dismiss, or in the alternative for summary judgement (Doc. 31) be GRANTED as to Sharp's 14th Amendment procedural due process claim and DENIED as to Sharp's 4th Amendment warrantless search claim. It is further

ORDERED that the parties shall file any objections to this Recommendation **on or before September 30, 2024.** A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous,

conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981)(en banc).

DONE this 16th day of September, 2024.

/s/ Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE